UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| AMANDA VINOVA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 15-37-GFVT |
| V. | ) | |
| | ) | **MEMORANDUM OPINION** |
| HENRY COUNTY BOARD | ) | **&** |
| OF EDUCATION, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |
| | ) | |

*** *** *** ***

Plaintiff Amanda Vinova taught at New Castle Elementary School in Henry County, Kentucky, during the 2010-2014 school years. During the spring of 2013, Vinova married her same-sex partner, Lauren Hale, who also taught at New Castle Elementary. The next year, in May 2014, Vinova learned that her one-year contract would not be renewed for the 2014-2015 school year. Vinova subsequently brought suit against the Henry County Board of Education and other related entities, alleging violations of Title VI, KRS § 344.040, Title VII, and Title IX. Presently before the Court is the Henry County Board of Education's motion for summary judgment, which, for the reasons set forth below, is GRANTED.

# I

The parties appear to agree on the basic factual background.[1] Amanda Vinova taught fourth grade at New Castle Elementary in Henry County, Kentucky, during the school years of

---

[1] As Vinova's response brief does not contain any recitation of the facts or dispute the factual statement presented in Defendant's motion, the Court assumes she does not contest the basic facts.

2010-2014. [R. 1-1 at 4.] During that time period, Defendant Henry County Board of Education (the Board) was the entity responsible for the administration of the public schools in Henry County. [*Id.* at 3.] Lauren Hale also taught at New Castle Elementary during the time that Vinova worked there. Hale and Vinova were married in New York on May 18, 2013.[2] [R. 20-3 at 5.] At some point before January 2013, Hale allegedly sent a notification to the interim principal Staci Hoene, announcing her wedding engagement to Vinova.[3] [R. 1-1 at 4.] In January 2013, Hoene apparently included the wedding engagements of other teachers at the school in a public announcement but did not include the engagement of Vinova and Hale.[4] On January 9, 2013, Hale sent an e-mail to Hoene, informing her that she and Vinova planned to get married on May 18, 2013, and that they were "hurt when you made a point to mention every faculty member that was getting married except us." [R. 19-5.] Ms. Hoene responded the same day and apologized, stating that she was unaware of Vinova's engagement and any omission was unintentional. [*Id.*] At some point later on, and before Vinova and Hale's wedding, the school had a bridal shower for them, and several staff members gave them gifts and cards, although Vinova does not recall who organized or attended the shower. [R. 20-3 at 8-9.]

Vinova alleges that after her marriage to Hale, she was treated differently and unfairly because of their same-sex relationship. In her deposition, Vinova testified that although other

---

[2] This date is based on Vinova's deposition testimony. [R. 20-3 at 5.] The Court notes that the parties' briefs occasionally state this date as May 2014, but given the timeline of other events, 2013 appears to be the logical date.

[3] Vinova's Complaint states this occurred during the school year of 2013-2014, but since Vinova and Hale were married in May 2013, and the exhibit of the e-mail from Hale to Staci Hoene is dated January 9, 2013, the alleged announcement must have taken place before January 9, 2013. Moreover, the record contains no evidence of the notification Hale allegedly sent about the engagement other than Vinova's statement that she "believe[s]" Ms. Hoene knew about her engagement "because she knew about all the other ones." [R. 20-3 at 13.]

[4] The Court notes again the discrepancy in the dates referenced in Vinova's Complaint, which appears to confuse the school year of 2013-2014 with the school year 2012-2013. [R. 20-3 at 13.]

staff members did not make any overtly negative comments to her, she felt she was ignored and unwanted. [R. 20-3 at 9-10.] As further evidence of allegedly disparate treatment, Vinova contends that she was required to submit new social security cards in order to have her married name listed on her name plate, even though she believed other teachers who were married that same year did not have to submit similar documentation. [R. 1-1 at 4; R. 20-3 at 15-16.]

On June 30, 2013, after Vinova and Hale's wedding, Vinova signed a one-year contract of employment for the 2013-2014 school year. Vinova testified that during the 2013-2014 school year, she had "all good reviews in all of the areas" in which she was evaluated, and the principal at the time referred to her as "phenomenal."[5] [R. 20-3 at 8.] Vinova also testified that during that same year, she and another teacher organized an Energy Team Project for some fourth-grade students that won a nationally recognized competition. [*Id.*] According to Vinova, although it was her "innovative idea" for the project, her name and contributions were deliberately omitted from the announcement about the project that was posted on the school's website. [R. 1-1 at 4; R. 20-3 at 24.] When she e-mailed Principal Eric Davis about the omission, however, he had it rewritten to include her. [R. 19-7, R. 19-8.]

Despite Vinova's apparent success as a teacher, the Superintendent of the Board, Tim Abrams, decided not to renew her contract for the 2014-2015 school year. [R. 19-3; R. 19-1 at 3.] Abrams also chose not to renew the contract of another teacher, Melissa Michael. [R. 19-1 at 3.] According to the Board, the school district anticipated a decline in enrollment in the number

---

[5] This is based on Vinova's deposition testimony alone since the record does not reflect any of these reviews or evaluations. Vinova's Complaint states that she "received many accolades for her teaching abilities and achievements" that year, but when asked what these were during her deposition, she only mentioned her reviews from Principal Davis and winning a team competition, further discussed below. [R. 1-1 at 4; R. 20-3 at 7-8.] However, since the Board does not dispute that Vinova received favorable reviews, the Court will assume she did.

of students attending New Castle Elementary in 2014.  [R. 19-3; R. 19-1 at 3.]  The Board claims that at that time there were ten non-tenured teachers at New Castle whose contracts required yearly renewal, and Principal Eric Davis recommended that the Board respond to the enrollment problem by not renewing the contracts for Michael and Vinova.[6]  [R. 19-3; R. 19-1 at 3.]  Abrams then drafted a letter informing Vinova that her contract would not be renewed for the school year of 2014-2015, and Principal Eric Davis presented that letter to her on May 2, 2014.  [R. 19-3; R. 19-9; R. 20-3 at 17-19.]  The letter did not give any reasons for the non-renewal, and Vinova testified that Davis told her she could ask Abrams about it in writing if she wanted to know the reasons for it.  [R. 19-9; R. 20-3 at 19.]  Vinova further testified that she never asked Abrams for an explanation, and that Davis said he could not discuss it with her.  [R. 20-3 at 19-20.]  Vinova's wife, Lauren Hale Vinova, also had a contract that required yearly renewal, and Abrams chose to renew that contract for the 2014-2015 school year.  [R. 19-3 at 3.]

Vinova's Complaint alleges that other teaching positions within New Castle Elementary "were available" but "none were offered" to Vinova.  [R. 1-1 at 4.]  In Vinova's affidavit, she further alleges that two weeks after her termination, another teaching position opened for which she applied but was not given the opportunity to interview.  [R. 20-1 at 2.]  According to Vinova, the person who was hired for that position was an assistant teacher who "had not been a full-time teacher," and therefore Vinova claims she would have been the preferred candidate if not for the Board's discrimination against her.  [*Id.*]  Principal Davis concedes that a position to teach first grade came open, and that he knew Vinova applied for the position, but he states that he believed

---

[6] The Court notes that Vinova's Complaint alleges Davis recommended she be reemployed for the 2014-2015 school year, but she offers no documentation supporting that assertion, and both Davis' and Abrams' affidavits state that Davis actually recommended that the district not renew Vinova's contract along with Melissa Michael's.

the other candidate was a better fit because of her experience teaching the same children who would be moving into the first grade that year. [R. 22-1.]

Vinova subsequently brought suit against the Board, and several other Defendants, alleging that she was wrongfully terminated and discriminated against on the basis of her gender, her sexual orientation, and because of her same-sex marriage. [R. 1-1 at 5-7.] Although Vinova originally brought suit in Henry Circuit Court, the Defendants properly removed the case to federal court on the basis of federal question jurisdiction. [R. 1.] On November 24, 2015, this Court granted the Defendants' partial motion to dismiss Vinova's claims against all Defendants except the Henry County Board of Education, finding that Vinova's claims cannot be brought against individuals, and that New Castle Elementary is not a legal entity that can be sued. [R. 13 at 10-11.] The Board now argues it is entitled to summary judgment on all of Vinova's claims because no genuine issue of material fact exists such that a jury could find in Vinova's favor.

## II

### A

In addressing the remaining state law claims, because Kentucky is the forum state, the Court will use Kentucky's substantive law. *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 526 (6th Cir. 2006) (citations omitted). However, federal procedural law will govern as applicable, including in establishing the appropriate summary judgment standard.[7] *Weaver v. Caldwell Tanks, Inc.*, 190 F. App'x 404, 408 (6th Cir. 2006).

Summary judgment is appropriate when the pleadings, discovery materials, and other documents in the record show "that there is no genuine dispute as to any material fact and the

---

[7] Vinova appears to argue that summary judgment should not be granted in this case based on Kentucky's standards for summary judgment and only cites to Kentucky caselaw in support. As the federal standard for summary judgment is different than that of Kentucky's, the Court finds Vinova's arguments on this point inapplicable.

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986). "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corp. of the Pres. of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating there is a genuine issue in dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324).

The Court must then determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Booker v. Brown & Williamson Tobacco Co*., 879 F.2d 1304, 1310 (6th Cir. 1989) (quoting *Anderson*, 477 U.S. at 251-52). In doing so, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001). Summary judgment is inappropriate where there is a genuine conflict "in the evidence, with affirmative support on both sides, and where the question is which witness to believe." *Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013).

At the outset, the Court notes that Vinova fails to respond to most of the arguments raised by the Board. Vinova's response to the motion primarily argues that she is claiming

discrimination not solely because of her sexual orientation but because of her nonconformance with certain gender stereotypes. [R. 20 at 1-3.] Vinova's only additional arguments concern the relative burdens in a discrimination case, and the standard for summary judgment, both of which she misinterprets.[8] [*Id.* at 3-4.] Vinova's failure to respond to the Board's other arguments could be interpreted as a waiver of opposition to them. *See Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (recognizing that a party's failure to respond to an opposing party's motion means that arguments in opposition to that motion are waived). Instead of automatically granting the Board summary judgment, however, "the court must review carefully those portions of the submitted evidence designated by the moving party." *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 410 (6th Cir. 1992). In doing so, the Court is not required to "*sua sponte* comb the record from the partisan perspective of an advocate for the non-moving party. Rather, in the reasoned exercise of its judgment the court may rely on the moving party's unrebutted recitation of the evidence . . . in reaching a conclusion that certain evidence and inferences from evidence demonstrate facts which are 'uncontroverted.'" *Id.*

## B

Title VI of the Civil Rights Act of 1964 prohibits discrimination "on the ground of race, color, or national origin." 42 U.S.C. § 2000d. Title VI does not address discrimination based on gender, sex, or sexual orientation. "[W]hen the statutory language is plain, we must enforce it according to its terms." *Foster v. Michigan*, 573 F. App'x 377, 387-88 (6th Cir. 2014 (quoting *Jimenez v. Quarterman*, 555 U.S. 113, 118 (2009)). As applied to Vinova's claims, "[b]ecause it

---

[8] Concerning the standard in a discrimination case, Vinova contends that whether the evidence establishes an employer's discriminatory motive is always a factual question for a jury to decide – an assertion which, as explained below, incorrectly interprets the relevant caselaw. [R. 20 at 3-4.] As for summary judgment, Vinova apparently confuses Kentucky's standard with the federal summary judgment standard outlined above, and thus her argument that Kentucky's standard should apply here is irrelevant. [*Id.*]

does not say anything about sex or gender, the text of 42 U.S.C. § 2000d itself compels us to conclude that Title VI does not provide a cause of action for gender discrimination." *Foster*, 573 F. App'x at 388; *see also Alexander v. Sandoval*, 532 U.S. 275, 297 (2001) (differentiating Title IX from Title VI by referring to it as the "gender-based twin" of Title VI). Similarly, the plain language of Title VI also does not provide a cause of action for discrimination based on sexual orientation. As Vinova does not allege discrimination based on race, color, or national origin, her claims brought under Title VI must fail as a matter of law.

### C

Under Title VII of the Civil Rights Act of 1964, employers are prohibited from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). The Kentucky Civil Rights Act (KCRA) also makes it unlawful for an employer "[t]o fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's race, color, religion, national origin, sex, age ...." KRS § 344.040(1). Because the KCRA "mirrors Title VII of the Civil Rights Act of 1964, [gender] discrimination claims under the KCRA are to be evaluated using the federal standard of gender discrimination." *Bargo v. Goodwill Indus. of Kentucky, Inc.,* 969 F.Supp.2d 819, 825 (E.D.Ky.2013) (*citing Smith v. Leggett Wire Co.,* 220 F.3d 752, 758 (6th Cir.2000)); *see also Williams v. Wal–Mart Stores, Inc.,* 184 S.W.3d 492, 495 (Ky. 2005) (explaining that Kentucky's Supreme Court interprets the KCRA consistently with its federal anti-discrimination counterparts). Thus, the Court will address Vinova's Title VII and KCRA claims together.

8

Here, Vinova claims she was discriminated against because of her non-conformity with gender stereotypes by marrying another woman.  As a threshold matter, the Court must address whether the prohibition against gender discrimination in Title VII and KRS 344 can be applied to discrimination based on one's sexual orientation or entering into a same-sex marriage.  Because Vinova's Complaint repeatedly refers to "discrimination due to her same-sex marriage," and uses phases such as "wrongfully terminating [her] solely due to her sexual orientation and same-sex marriage," and "reprisal solely due to her gender orientation and same-sex marriage," [R. 1-1 at 5, 6], the Board understandably assumes that Vinova alleges discrimination due to her sexual orientation.  Vinova, however, maintains that her claim is essentially gender discrimination because she was treated differently than a man would have been treated in the same circumstance – i.e., that of being married to a woman.  [R. 20 at 2-3.]  While a party cannot suddenly change the nature of their argument in their response to a motion for summary judgment, *see Tucker v. Union of Needletrades, Industrial, and Textile Employees*, 407 F.3d 784, 789 (6th Cir. 2005), Vinova's Complaint also alleges that the Board discriminated against her "due to her violating the gender stereotype of a female teacher by her marrying another woman," and that the Board "wrongfully terminat[ed] [her] solely due to gender, as shown by firing her when she married someone of her own gender, but not firing people solely based on them [sic] marrying someone of the opposite gender."  [R. 1-1 at 6, 7.]  Therefore, although the language in the Complaint is far from clear, the Court will allow Vinova's later clarification to direct the present analysis.[9]

---

[9] The Board, however, is entirely correct that sexual orientation is not a protected class under either Title VII or the KCRA, and that if that were Vinova's sole basis for her claim, this suit would fail as a matter of law.  *See Pedreira v. Kentucky Baptist Homes for Children, Inc*., 579 F.3d 722, 726-27 (6th Cir. 2009); *Vickers v. Fairfield Med. Ctr*., 453 F.3d 757, 762 (6th Cir. 2006).  Vinova has not pointed to any Supreme Court or Sixth Circuit authority indicating that sexual orientation is considered a protected class for purposes of Title VII, Title IX, or the KCRA.

Even while granting Vinova some leniency in how she frames the basis of her claim, it is not at all clear that Title VII cases can be brought on the basis of failing to conform with gender stereotyping in the context of same-sex marriage. *See, e.g., Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 763-64 (6th Cir. 2006) (cautioning that if homosexual plaintiff's claim of non-conformity with gender stereotypes were allowed to proceed under Title VII "any discrimination based on sexual orientation would be actionable under a sex stereotyping theory" because "all homosexuals, by definition, fail to conform to traditional gender norms in their sexual practices"); *Dawson v. Bumble & Bumble*, 398 F.3d 211, 218 (2d Cir. 2005) (granting summary judgment for employer after warning that discrimination claims on the basis of sexual orientation are easily conflated with claims based on gender stereotyping and explaining that such claims "should not be used to bootstrap protection for sexual orientation into Title VII") (internal quotation omitted). On the other hand, it is not at all clear that gender stereotyping claims such as Vinova's *cannot* be brought under Title VII. *See, e.g., Hamm v. Weyauwega Milk Prods., Inc.*, 332 F.3d 1058, 1064-65 (7th Cir. 2003) (finding claims brought because of gender stereotyping could be actionable under Title VII even though claims brought for discrimination because of sexual orientation were not); *Bibby v. Philadelphia Coca Cola Bottling Co.*, 260 F.3d 257, 262-64 (3d Cir. 2001) (expressly recognizing a Title VII cause of action for discrimination based on employee's failure to conform to stereotypical gender norms).

The relevant Sixth Circuit precedent recognizes that, in light of the Supreme Court's opinion in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989), the prohibition against gender discrimination in Title VII can extend to certain situations where the plaintiff fails to conform to stereotypical gender norms. *Smith v. City of Salem*, 378 F.3d 566, 573 (6th Cir. 2004) (collecting

cases).  Subsequent Sixth Circuit decisions, however, have also dismissed "sex-stereotyping" claims that were "more properly viewed as harassment based on [the plaintiff's] perceived homosexuality, rather than based on gender non-conformity." *Gilbert v. Country Music Ass'n, Inc.*, 432 F. App'x 516, 519-20 (6th Cir. 2011) (quoting *Vickers*, 453 F.3d at 763).  In *Gilbert*, the Sixth Circuit found the plaintiff's assertion that he was discriminated against because he did not conform to his employer's male stereotypes was simply a "formulaic recitation" of the elements of a gender-stereotyping claim and would not grant him Title VII protection for sexual orientation under a guise of a claim based on gender-stereotyping.  *Id.* at 520 (quoting *Vickers*, 452 F.3d at 764; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009)).

Since the time of *Gilbert*, the EEOC has issued a decision in *Baldwin v. Foxx*, EEOC Appeal No. 0120133080, stating that "allegations on the basis of sexual orientation necessarily state a claim of discrimination on the basis of sex" and therefore should be included within Title VII protection.  2015 WL 4397641,*10 (July 16, 2015).  While at least one other circuit has recently noted in conjunction with the EEOC that "disentangling gender discrimination from sexual orientation discrimination may be difficult," the Sixth Circuit has yet to comment on what, if anything, that decision may mean for claims such as Vinova's.  *Hively v. Ivy Tech. Community College*, --- F.3d ---, 2016 WL 4039703, *7 (7th Cir. July 28, 2016).[10]  However, we need not resolve this question here because even assuming, but not deciding, that Vinova can bring such a claim under Title VII, she still has not provided sufficient evidence of discrimination to survive summary judgment.

---

[10] The Court notes that, although Vinova previously made a passing reference to the Supreme Court's anticipated decision in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), as a potential basis for supporting her claim [R. 10 at 3], that case is not relevant here.  As the Seventh Circuit aptly noted, *Obergefell* was decided on constitutional grounds and did not "impact[] the statutory interpretations of Title VII" as it "did not address the issue of gender nor of workplace discrimination."  *Hively*, 2016 WL 4039703, at *10.

A plaintiff can prove her claims under Title VII by either direct or circumstantial evidence of intentional discrimination. *Ondricko v. MGM Grand Detroit, LLC,* 689 F.3d 642, 648–49 (6th Cir. 2012). "Direct evidence of discrimination is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id.* (quoting *Wexler v. White's Fine Furniture, Inc.,* 317 F.3d 564, 570 (6th Cir. 2003)); *see also Rowan v. Lockheed Martin Energy Sys., Inc.,* 360 F.3d 544, 548 (6th Cir. 2004) (direct evidence "proves the existence of a fact without requiring any inferences"). On the other hand, circumstantial evidence "is proof that does not on its face establish discriminatory animus, but does allow a fact finder to draw a reasonable inference that discrimination occurred." *Wexler*, 317 F.3d at 570. Here, Vinova points to five circumstances as evidence of the Board's alleged discrimination against her.

First, Vinova alleges that her wedding engagement was omitted from New Castle Elementary's announcements, which included the engagements of all other faculty members who planned to marry in 2013. [R. 1-1 at ¶¶ 3-4.] However, when this omission was brought to Principal Hoene's attention, she responded as follows: "I am so sorry. I was not aware of your engagement. Please know that I would NEVER intentionally leave you and Amanda out of our celebrations. Why didn't you speak up? Please know that I had absolutely NO idea or I would have shared. Again, I am so sorry." [R. 19-5.] Vinova has presented no evidence that Hoene actually knew about her engagement, nor does she point to anything indicating the omission was intentional. When asked in her deposition whether she thought Hoene's apology was sincere, Vinova answered that it "was hard to – to gauge over written communication." [R. 20-3 at 12.]

Vinova further testified she had not had any other problems in her relationship with Hoene. [*Id.* at 13.] Without more, this is not evidence of discrimination.

Second, Vinova alleges that the school discriminated against her by requiring her to submit a new Social Security card in order to have her name changed after her marriage, but did not require the same of other faculty members who were married the same year. [R. 1-1 at 4; R. 20-3 at 15.] In response, the Board submitted an e-mail exchange showing that the same e-mail sent to Vinova and Hale requesting new Social Security cards in order to have their names changed in the payroll system was also sent to at least three other recently married women. [R. 19-6.] Specifically, Principal Davis told all the women that "the board policy prohibits central office from 'officially' changing your last names until you submit new social security cards with your updated names." [R. 19-6 at 2.] Davis also forwarded all of them an e-mail from the Chief Information Officer explaining "[i]t is our policy" to not make a name change for married people until they submit new Social Security Cards. [R. 19-6 at 2.] This policy made no distinction between the women who married men and the women who married other women. Because the same requirement applied to all married women, it is not considered a discriminatory policy.[11]

As a third instance of alleged discrimination, Vinova points to the fact that her nameplate used "Ms." while all the other married teachers' nameplates used the term "Mrs." [R. 20-3 at 14.] Although Vinova claims that she found this discrepancy "offensive," she does not give any

---

[11] The only support Vinova offers for her assertion that other married women were not subject to the same requirement is her wife Lauren Hale's affidavit claiming the other teachers did not have to submit documentation to have their names changed on the school's website. [R. 20-2.] The Court notes that additional information on this point may possibly be included in Hale's and Vinova's affidavits, but the affidavits were filed in the record in a manner omitting entire portions, including the section addressing the Social Security card documents. [*See* R. 20-1, R. 20-2.] The Board therefore has met its burden as the moving party by offering evidence to refute Vinova's assertion on this point, while Vinova has failed to rebut the resulting presumption. *Hall Holding*, 285 F.3d at 424.

reason for why the name plate is evidence of discrimination.[12]  [R. 20-3 at 14.]  Vinova also conceded that soon after she mentioned it to Principal Davis, he had the nameplate changed as she requested.  [*Id*.]

Fourth, Vinova alleges that in May of 2014 she did not receive appropriate recognition for her contributions to the Energy Team Project.  [R. 1-1 at ¶ 6.]  More specifically, Vinova contends she "was deliberately omitted" from the school's website announcement about the project, and, in her deposition and affidavit, she claimed she was not invited to attend a board meeting where the project was recognized.  [R. 20-3 at 24; R. 20-1 at 2.]   In response, the Board presented an e-mail exchange in which Vinova brought the omission of her name in the website announcement to the attention of Principal Davis on the evening of May 8, 2014. [R. 19-7.] Davis responded the next morning, telling Vinova that he and "Shawna" were going to rewrite the announcement.  [*Id*.]  Later that same evening Davis sent Vinova another e-mail informing her that the revision had been completed.  [R. 19-8.]  In her deposition, Vinova conceded that her name was added to the website once the announcement had been rewritten.  [R. 20-3 at 24-25.] Despite the revision, however, when Vinova was asked why she felt the initial omission of her name from the website was direct retaliation due to her same-sex marriage, she simply responded, "Because there was no other reason why."  [R. 20-3 at 25.]  Such an assumption is insufficient to meet her burden of production as to a material factual dispute.  As for the board meeting that she was not invited to, Vinova admitted she never talked to the superintendent or to Principal Davis about her concern.  [R. 20-3 at 25-26.]

---

[12] To be clear, Vinova's Complaint does not list this as evidence of discrimination, nor does she reference it anywhere in her brief.  The Court addresses this allegation here only because Vinova specifically mentioned it in her deposition testimony when asked to explain why she thought she was discriminated against.

Finally, Vinova alleges that her termination is also evidence of discrimination because, despite her good reviews and qualifications, she was not offered other positions or selected to interview for a position that came open soon afterward.  [R. 1-1 at 4-5; R. 20-1 at 2.]  When asked why she believed her termination was connected to her same-sex marriage, Vinova responded, "Because I don't see any other reason why."  [R. 20-3 at 20-21.]  She then further referenced the allegations discussed above as other "evidence" supporting that belief.  [*Id.* at 21.]  She also alleged that she was not given a recommendation after her contract was terminated, but when pressed for details admitted that Principal Davis "actually did give me a recommendation that particular summer," and that when she asked for another one later on he told her he could not do so because of the pending lawsuit.  [R. 20-3 at 22.]

None of these instances "require[] the conclusion that unlawful discrimination" was a factor at all in the Board's decision not to renew Vinova's contract, let alone "a motivating factor."[13]  *See Wexler*, 317 F. 3d at 570.  Importantly for purposes of summary judgment, Vinova also has not shown that these alleged instances of discrimination should be interpreted differently, or that there is any conflict in the evidence the Board has produced refuting her claims.  *See Dawson*, 528 F. App'x at 452.  Indeed, Vinova has not responded to the Board's arguments concerning these five instances at all.[14]  Because Vinova has not produced direct evidence of discrimination, she bears the burden of proving a circumstantial case.

---

[13] These allegations also do not constitute direct evidence that the Board considered "impermissible factors" when making the decision not to renew her contract, and therefore do not trigger a need for the "mixed-motive analysis" outlined in *Price Waterhouse*, 490 U.S. at 244-46.  *See Wexler*, 317 F.3d at 571.  Criticism of an employee's performance that is "linked to stereotypes associated with a plaintiff's membership in a protected class" could trigger a mixed-motive analysis as to whether those stigmatizing beliefs were associated with an adverse employment decision.  *Wexler*, 317 F.3d at 571-72.  Here, Vinova nowhere alleges any such criticism of her performance linked to her gender or to any stereotypes associated with her same-sex marriage.

[14] As noted above, this lack of response can be deemed a waiver of opposition, and the Court may reasonably rely on the "unrebutted recitation of the evidence" by the non-moving party.  *Guarino*, 980 F.2d at 410.

**3**

When a plaintiff seeks to prove intentional discrimination with circumstantial evidence, the burden shifting framework from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) applies. *Geiger v. Tower Automotive,* 579 F.3d 614, 621 (6th Cir. 2009). Under *McDonnell Douglas,* the plaintiff must first establish a prime facie case of discrimination. *Schoonmaker v. Spartan Graphics Leasing, LLC,* 595 F.3d 261, 264 (6th Cir. 2010) (quoting *Reeves v. Sanderson Plumbing Products, Inc .,* 530 U.S. 133, 148 (2000)). If successful, the burden then shifts to the defendant employer to "articulate a legitimate nondiscriminatory reason for the adverse employment action." *Id.* (citation omitted). Once this showing has been made, the burden of production shifts back to the plaintiff who must show that the employer's explanation was merely pretext for intentional discrimination. *Id.* (citation omitted). Importantly, the burden of production shifts throughout the analysis, but the burden of persuasion remains on the plaintiff to "demonstrate that age [or gender] was the 'but-for' cause of their employer's adverse action." *Id.* (quoting *Geiger,* 579 F.3d at 620) (internal quotations marks omitted).

**a**

Under the *McDonnell-Douglas* framework, Vinova must first establish a *prima facie* case of gender discrimination by showing that: "(1) she is a member of a protected class, (2) she was subjected to an adverse employment action, (3) she was qualified [for the position at issue], and (4) she was treated differently than similarly-situated male and/or nonminority employees for the same or similar conduct." *McClain v. NorthWest Community Corrections Center Judicial Corrections Bd.,* 440 F.3d 320, 332 (6th Cir. 2006); *see also Lewis v. Norfolk S. Ry. Co*., 590 F.

App'x 467, 469 (6th Cir. 2014) (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008)).

Here, there is no dispute that as a woman, Vinova is a member of a protected class in the context of gender discrimination claims. As explained above, the Court again will assume for the sake of argument that her position concerning gender stereotypes related to same-sex marriage can support a discrimination claim.[15] The parties apparently agree that Vinova suffered an adverse employment decision through her termination from New Castle Elementary. Indeed, "[t]ermination is the quintessential adverse employment action." *Harris v. Burger King Corp.*, 993 F.Supp.2d 677, 686 (W.D. Ky. 2014). There also does not appear to be any dispute that Vinova was objectively qualified for her teaching position.

Vinova, however, has not sufficiently alleged facts supporting the fourth prong of the prima facie case – that she was treated differently from other similarly situated employees. In making this showing, the plaintiff must show that the comparable employees are similarly situated "*in all respects.*" *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992) (emphasis in original). "[T]o be deemed 'similarly-situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (citations omitted). While this standard is not necessarily construed by courts to require an exact comparison between the plaintiff and other employees "in every single aspect of their employment," *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998),

---

[15] The Court is by no means determining that such a claim can in fact be brought under Title VII or KRS 344 within the Sixth Circuit, but is merely recognizing that although Vinova's Complaint is unclear as to the exact basis for her claims, regardless of the basis, she still has failed to meet her burden in the context of summary judgment.

Vinova still must show that "similarity between the compared employees [] exist[s] in all relevant aspects of their respective employment circumstances." *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). Indeed, "[a]bsent proof that other employees were similarly situated, it is not possible to raise an inference of discrimination." *Nickell v. Memphis Light, Gas & Water Div.*, 16 F. App'x 401, 402 (6th Cir. 2001) (quoting *Shah v. General Elec. Co.*, 816 F.2d 264, 270 (6th Cir. 1987)).

In the context of gender discrimination, showing that similarly situated employees not in the protected class were treated more favorably generally means pointing to employees of the opposite gender. *See, e.g., Harrell v. Delaware North Companies*, 642 F. App'x 543, 546 (6th Cir. 2016) (finding plaintiff could not establish prima facie case of gender discrimination because she presented no evidence showing "that she was treated differently than similarly situated males for the same or similar conduct"); *Board of Regents of Northern Ky. Univ. v. Weickgenannt*, 485 S.W.3d 299, 307 (Ky. 2016) (explaining that the "*McDonnell Douglas* framework we adopted within the gender-discrimination context directs plaintiffs to show *similarly situated* male comparators" who were similarly qualified and subject to the same reviewers). Vinova insists that the basis for her gender discrimination claim is that she was treated differently as a woman married to another woman than if she had been a man married to a woman. [R. 20 at 2.] Fatal to this argument, however, is that New Castle Elementary did not employ any male teachers with limited contracts at the time of Vinova's termination, nor did it hire a male teacher for the first-grade position that subsequently came open. [R. 19-3.] Therefore, she cannot show she was treated differently than similarly situated male teachers.

The Court acknowledges the difficulties that could arise from holding that gender discrimination against women cannot exist in a context in which all the employees are female, and also notes that the Sixth Circuit has cautioned against applying the standard of "similarly situated" too narrowly. *See Martin v. Toledo Cardiology Consultants, Inc*., 548 F.3d 405, 412 (6th Cir. 2008). Therefore, because the only employees similarly situated to Vinova are all women, the Court has considered Vinova's treatment as compared to them as well. To the extent Vinova contends that women who were married to men were treated more favorably, at the same time that the Board chose not to renew Vinova's contract, it also chose not to renew the contract of another female teacher who had recently married a man, and it did so for the same stated reason – that of an anticipated drop in enrollment.[16] [*Id*.; R. 19-6; R. 22-1; R. 20-3 at 20.] Perhaps most importantly, the other non-tenured female teacher who married another woman – Vinova's wife, Lauren Hale – was not terminated from her position.

At the very least, Vinova must show there was some connection between her termination and her gender, whether or not that includes conforming to gender stereotypes. *Grosjean v. First Energy Corp*., 349 F.3d 332, 336 (6th Cir. 2003); *see also Bowers v. State Farm Ins. Co*., 2011 WL 304578, *9 (W.D. Ky. Jan. 25, 2011) (explaining that although "[t]he proof required for a prima facie case may differ from case to case … [t]he plaintiff must at least establish an inference of discrimination") (internal citations omitted). Vinova, however, has not established that she was treated differently than any other teachers at all, regardless of gender. To the extent Vinova alleges that she was treated differently from female employees who married men, such as

---

[16] Although Vinova's affidavit states that this other teacher – Melissa Michael – "had a list of infractions during her tenure as opposed to [Vinova]," she presents no evidence of any such infractions, nor does she present evidence of her own record or reviews. [R. 20-1.]

submitting legal proof of her name change, the title "Ms." instead of "Mrs." on a name plate, or being omitted from the school's wedding announcements, the Board has adequately refuted such allegations or otherwise shown they were inadvertent. Moreover, Vinova has not shown how any of the actions in question could be attributed to the Board, which is the only remaining Defendant in the case. In other words, Vinova has presented "no evidence from which an inference of illegal motivation may be drawn." *Robinson v. Gen. Elec. Co.*, 1992 WL 295233, *4 (E.D. Ky. July 10, 1992); *see also Grosjean*, 349 F.3d at 336 ("the prima facie case requires evidence adequate to create an inference that an employment decision was based on an illegal discriminatory criterion") (internal quotation marks and citation omitted).[17]

**b**

The Court recognizes "there are many context-dependent ways by which plaintiffs may establish a prima facie case of discrimination." *Rachells v. Cingular Wireless Employee Servs., LLC*, 732 F.3d 652, 661 (6th Cir. 2013) (internal quotation omitted). Even assuming Vinova had established a prima facie case, she still has presented no evidence indicating the Board's reason for terminating her contract was a pretext for discrimination. Once a plaintiff establishes a prima facie case of discrimination, the burden of production shifts to the employer to proffer a legitimate, non-discriminatory reason for the adverse employment action at issue. *Riley v. PNC Bank, Nat. Ass'n*, 602 F. App'x 316, 319 (6th Cir. 2015 (quoting *McDonnell Douglas*, 411 U.S. at 802)). At this stage, "[t]he defendant need not persuade the court that it was actually

---

[17] Even when a plaintiff does not adequately show that a similarly-situated non-protected employee was treated better, "[a]lternatively, a plaintiff could show that the employer made statements indicative of a discriminatory motive" in order to establish a prima facie case. *Lewis-Smith v. Western Ky. Univ.*, 85 F.Supp.3d 885, 900 (W.D. Ky. 2015) (internal citation and quotation marks omitted). Vinova has provided no evidence that anyone on the Board ever made any statements to or about her that would indicate a discriminatory motive.

motivated by the proffered reasons." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254

(1981). Rather, the Board's burden is one only of production. "[T]he ultimate burden of

persuasion remains on the plaintiff to demonstrate that age [or sex] was the 'but-for' cause of

their employer's adverse action." *Provenzano v. LCI Holdings, Inc.,* 663 F.3d 806, 812 (6th Cir.

2011) (*citing Burdine,* 450 U.S. at 254).

Here, the Board has presented a legitimate, non-discriminatory reason for not renewing

Vinova's contract by explaining that it anticipated a decline in enrollment in the number of

students attending New Castle Elementary School in the following school year. [R. 19-3; R. 22-

1.] The Board also contends that it did not hire Vinova for the first-grade teaching position that

opened soon afterward because Principal Davis believed the other candidate was better qualified

due to her specific experience with the same children who would be in that classroom. These

stated reasons are sufficiently similar to a reduction-in-force situation, where reducing the total

number of employees is economically necessary and commonly results in discharging qualified

employees. *See Beck v. Buckeye Pipeline Servs. Co.,* 501 F. App'x 447, 449-50 (6th Cir. 2012);

*see also Slapak v. Tiger Management Grp., LLC,* 594 F. App'x 290, 295 (6th Cir. 2014) (noting

that employer "may approach its reduction in force as it sees fit," as "it is inappropriate for the

judiciary to substitute its judgment for that of management") (quotation omitted).

As long as the Board "carries this burden of production," which it has in this case, "the

presumption raised by the prima facie case is rebutted." *St. Mary's Honor Center v. Hicks*, 509

U.S. 502, 507 (1993) (quoting *Burdine*, 450 U.S. at 255; *see also Kentucky Ctr. for the Arts v.

Handley*, 827 S.W.2d 697, 700-01 (Ky. Ct. App. 1991) (explaining that in meeting its burden of

production "the employer need only articulate with clarity and reasonable specificity, a reason

unrelated to a discriminatory motive, and is not required to persuade the trier of fact that the

action was lawful"). "The plaintiff then has the full and fair opportunity to demonstrate . . . that the proffered reason was not the true reason for the employment decision," but that instead she was a victim of intentional discrimination. *St. Mary's Honor Center*, 509 U.S. at 507-08 (quoting *Burdine*, 450 U.S. at 256).

Thus, to show that the Board's reason was pretextual, Vinova would have to produce evidence that the Board's explanation for her termination was false, and that gender discrimination was the true reason for not renewing her contract. *See St. Mary's Honor Center*, 509 U.S. at 507-08; *Gragg v. Somerset Technical College*, 373 F.3d 763, 768 (6th Cir. 2004). In other words, because the Board has met its burden by setting forth its reasons for its decision, Vinova now has "the opportunity to demonstrate that the proffered reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the court that she has been the victim of intentional discrimination." *St. Mary's Honor Center*, 509 U.S. at 516 (quoting *Burdine*, 450 U.S. at 256). "A plaintiff can show pretext by demonstrating that the employer's stated reasons (1) had no basis in fact; (2) did not actually motivate the employer's decision; or (3) were insufficient to motivate the employer's action." *Lewis v. Norfolk Southern Ry. Co.*, 590 F. App'x 467, 469 (6th Cir. 2014) (citing *Chen v. Dow Chem. Co.*, 580 F. 3d 394, 400 (6th Cir. 2009)). At this point, "the ultimate factual issue in the case" which the Court must decide is "whether the defendant intentionally discriminated against the plaintiff." *St. Mary's Honor Center*, 509 U.S. at 516 (quoting *U.S. Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983)).

Here, Vinova has not offered any persuasive evidence indicating that the Board's anticipated decline in the number of students was a pretext for discriminating against her. Her

only attempt to even suggest pretext is her claim that she received excellent reviews while employed by New Castle and the fact that she was not hired for the position that opened two weeks after her termination. First, although Vinova claims her reviews during the 2013-14 school years were more than satisfactory [R. 1-1 at 4], she has provided no documentation or other verification of that claim, and both Principal Davis and Superintendent Abrams directly refuted her related assertion that Davis recommended her reemployment for 2014-15 based on such reviews. [R. 19-3; R. 22-1.] Second,

Vinova does not allege that anyone was hired to replace her as a fourth-grade teacher, but rather that a position to teach first grade opened shortly after her termination, that she was not given a chance to interview, and that the subsequent hire was less qualified than she was.[18] Principal Davis explained his decision to hire a different person by stating that although Vinova also applied for the position, the other candidate had prior experience teaching very young children and in fact had taught the same children who would be entering the first-grade classroom in question. [R. 22-1.] Moreover, Vinova presents no evidence refuting that a decline in expected enrollment was not a legitimate concern, or that she was not clearly a better candidate than the subsequent hire for the first-grade position.

Notably, Vinova also does not allege that any members of the Board discriminated against her or that the Board was responsible for any actions taken other than her termination. Principal Davis is the only employee she accuses of taking any discriminatory action, and he has been dismissed as a Defendant from this suit. Vinova even conceded that she did not receive

---

[18] In certain circumstances, an inference of discrimination could arise when a terminated plaintiff is replaced by someone who was not in the protected class. *See Hill v. Pharmacia & Upjohn Co.*, 67 F. App'x 277, 281 (6th Cir. 2003). Here, however, the subsequent hire was female and neither party has presented evidence concerning her marital status or sexual orientation.

"any negative feedback about [her] marriage" from anyone, but stated that she sensed "more of an ignoring and kind of unwanted feeling" from certain staff rather than outright hostility. [R. 20-3 at 9.] When asked if anyone in particular was ignoring her, Vinova responded "[j]ust other teachers in the building and just staff and teachers that I worked with." [*Id*. at 10.] When pressed further, she could name only two other teachers, and conceded they did not make any overt comments to her but that she felt "our relationship kind of shifted." [*Id*.] Not only does this not constitute evidence of discrimination, but her shift in relationship with other teachers has nothing to do with whether the Board's true motive for terminating her was discriminatory.

Significantly, as further evidence that the Board's actions were not the result of intentional discrimination against women who marry other women, the Board chose to renew the contract of Vinova's wife, Lauren Hale, who apparently was in the same "protected class" as Amanda Vinova. [R. 22-1.] Presumably, any hidden discriminatory animus toward Vinova based on her non-conformance to gender stereotypes by marrying another woman would have applied equally to the woman she married. Therefore, because Lauren Hale Vinova's contract was renewed despite her same-sex marriage, any suggestion that the Board's stated reasons for terminating Amanda Vinova were pretext for discrimination is unpersuasive.

In conclusion, an essential requirement for disparate treatment claims is that "the plaintiff must establish that the adverse employment action was motivated, in part, by the plaintiff's protected-group status. Absent a discriminatory basis, an employer does not violate Title VII, even though the discharge may have been arbitrary, unfair, or for no reason at all." *Lewis-Smith*, 85 F.Supp.3d at 897 (citing *St. Mary's Honor Ctr.*, 509 U.S. at 514). Although Vinova claims that the Board's actions discussed above constituted direct and intentional discriminatory

treatment, she has produced no evidence that these actions were even intentional (except for not renewing her contract), let alone discriminatory. On the other hand, the Board has produced evidence showing an absence of any discrimination, including the fact no similarly situated employees were treated better. In contrast, Vinova does not even attempt to refute the Board's arguments.[19] She therefore has failed to meet her burden within the context of a Title VII discrimination case, as well as within the context of summary judgment since as the non-moving party she has not come forward with any specific facts demonstrating there is a genuine issue in dispute.[20] *See St. Mary's Honor Ctr.*, 509 U.S. at 517-18; *Hall Holding*, 285 F.3d at 424.

## D

Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance[.]" 20 U.S.C § 1681(a). Moreover, "whereas Title VII aims centrally to compensate victims of discrimination, Title IX focuses more on "protecting" individuals from discriminatory practices carried out by recipients of federal funds." *Gebser v. Lago Vista Indep. Sch. Dist*., 524 U.S. 274, 290, (1998) (citation omitted). The parties do not dispute that the Board receives federal financial assistance, and is therefore subject to Title IX's prohibition of gender discrimination, but they do dispute whether

---

[19] Despite the Court's previous admonishments [R. 13 at 9], Vinova's counsel also fails to cite to any legal authority in support of her arguments, other than to reference Kentucky's summary judgment standard which is inapplicable.

[20] As explained above, once the party moving for summary judgment has satisfied its burden of showing "an absence of evidence to support the non-moving party's case," *Celotex*, 477 U.S. at 325, the burden shifts to the non-moving party to come forward with specific facts demonstrating the existence of a genuine dispute. *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Vinova's failure to respond to most of the arguments in the Board's motion for summary judgment necessarily indicates a lack of genuine dispute because opposition to the Board's factual assertions has been waived. *See Scott v. State of Tenn*., 878 F.2d 382 (6th Cir. 1989) (stating that when a party "fails to respond or otherwise oppose a [party's] motion, then the district court may deem the [party] to have waived opposition to the motion").

this prohibition can apply to Vinova's case.

As with Vinova's Title VII claim addressed above, the Board contends that Title IX does not apply to claims based on sexual orientation [R. 19-1 at 8], while Vinova maintains that her claim is one of gender discrimination because she was treated differently than a similarly situated man would have been. [R. 20 at 3.] While the Sixth Circuit does not appear to have directly addressed whether such claims are actionable under Title IX, other circuits have emphasized that the phrase "on the basis of sex" includes claims that allege harassment or discrimination motivated by a failure to conform to gender stereotypes. *See, e.g., Carmichael v. Galbraith*, 574 F. App'x 286, 292-93 (5th Cir. 2014) (collecting cases); *Wolfe v. Fayetteville*, 648 F.3d 860, 867 (8th Cir. 2011). Again, however, the Court need not further address this dispute because even if Vinova can bring such a claim under Title IX, her claim still fails as a matter of law.

Claims brought under Title IX are analyzed in the same way as Title VII claims.[21] *Nelson v. Christian Bros. University*, 226 F.App'x 448, 454 (6th Cir. 2007) (collecting cases). Thus, as with Title VII claims, if there is no direct evidence of discrimination, the *McDonnell Douglas* framework applies as explained above. *See Arceneaux v. Vanderbilt Univ.*, 25 F. App'x 345, 347 (6th Cir. 2001). Vinova presents the same arguments in support of her Title IX claim as for her Title VII claim, and therefore the analysis is the same as that outlined above. Particularly because Vinova has not shown that "a comparable non-protected person was treated better" than she was, it is doubtful that Vinova can establish the prima facie case for gender

---

[21] The Court acknowledges that plaintiffs may bring other kinds of suits under Title IX such as claims of gender bias, sexual harassment, hostile environment, or deliberate indifference to harassment or discrimination. *See, e.g., Mallory v. Ohio Univ.*, 76 F. App'x 634, 638 (6th Cir. 2003); *Sahm v. Miami Univ.*, 110 F. Supp. 3d 774, 777-79 (S.D. Ohio 2015); *Johnson v. Galen Health Institutes, Inc.*, 267 F. Supp. 2d 679, 684-86 (W.D. Ky. 2003). Vinova's Complaint, however, does not mention such claims nor does it attempt to differentiate between her Title VII claim or her Title IX claim. In fact, her Title IX claim uses exactly the same language and consists of the same allegations as her Title VII claim, and therefore will be analyzed in the same manner. [*See* R. 1-1 at 6-7.]

discrimination under Title IX.  *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)

(citing *McDonnell Douglas*, 411 U.S. at 802).  As explained above, even if Vinova has

established a prima facie case, the Board has rebutted that case by explaining that it chose not to

renew her contract because of a decline in enrollment.

The burden then shifts to Vinova, who can still prove discrimination "either (1) by

showing that a discriminatory reason more likely motivated the employer or (2) by showing that

the employer's explanation is unworthy of credence."  *Thurman v. Yellow Freight Systems, Inc.*,

90 F.3d 1160, 1166 (6th Cir. 1996) (citing *Burdine*, 450 U.S. at 256).  Importantly for this case,

the "discrimination" that is actionable under Title IX "is a term that covers a wide range of

*intentional* unequal treatment."  *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 175 (2005)

(emphasis added); *see also Horner v. Kentucky High School Athletic Ass'n*, 206 F.3d 685, 695-

97 (6th Cir. 2000) (finding no violation of plaintiff's rights under Title IX where plaintiffs failed

to establish an intentional violation and the record contained no evidence of intentionally

discriminatory animus).  As explained above, Vinova has presented no evidence suggesting the

alleged discrimination was intentional, or contradicting the Board's reason for her termination.

This is particularly true in light of the fact that the Board renewed the contracts for eight out of

the ten non-tenured female teachers, including that of Vinova's wife, Lauren Hale.

Moreover, "whereas Title VII aims centrally to compensate victims of discrimination,

Title IX focuses more on "protecting" individuals from discriminatory practices carried out by

recipients of federal funds." *Gebser*, 524 U.S. at 290 (citation omitted).  "Because the express

remedial scheme under Title IX is predicated upon notice to an 'appropriate person' and an

opportunity to rectify any violation, 20 U.S.C. § 1682, . . . a damages remedy will not lie under

Title IX unless an official who at a minimum has authority to address the alleged discrimination

and to institute corrective measures on the recipient's behalf has actual knowledge of discrimination in the recipient's programs and fails adequately to respond." *Id*. Even then, such response "must amount to deliberate indifference to discrimination." *Id*. Here, Vinova has not identified any discriminatory practices that the Henry County Board of Education engages in. She also does not allege that she notified anyone on the Board about the alleged discrimination or gave Board members an opportunity to correct the problems. Nothing in the record indicates that any member of the Board even knew about the five instances Vinova claims are evidence of discrimination, and therefore the Board cannot have been indifferent to her treatment. For all these reasons, the Board must be granted summary judgment on Vinova's Title IX claim.

## III

In conclusion, Vinova has not met her burden of going beyond the pleadings and presenting specific evidence of a genuine factual dispute. *See Hall Holding*, 285 F.3d at 424 (citing *Celotex Corp.*, 477 U.S. at 324). She also has not rebutted the Board's reasons for not renewing her contract. "The Kentucky Supreme Court has explained that the [KCRA] was not intended as a vehicle for judicial review of business decisions regarding terminations. . . . Rather, the Act is intended to safeguard Kentucky citizens from unlawful discrimination." *Clark v. Alcan Aluminum Corp.,* 41 F. App'x 767, 777 (6th Cir. 2002) (quoting *Department of Corrections v. Furr,* 23 S.W.3d 615, 617 (Ky. 2000) (internal quotation marks omitted)). Similarly, with regard to Vinova's federal law claims, "[t]ime and again we have emphasized that [the Court's] role is to prevent unlawful [employment] practices, not to act as a super personnel department that second guesses employers' business judgments." *Gunn v. Senior Servs. of N. Kentucky*, 632 F. App'x 839, 848 (6th Cir. 2015) (internal quotation omitted).

Because Vinova has offered no credible evidence of unlawful employment practices, her claims fail as a matter of law.[22] Accordingly, and the Court being sufficiently advised, it is hereby ORDERED as follows:

1. The Board's Motion for Summary Judgment [**R. 19**] is **GRANTED**;

2. The pretrial conference set for April 5, 2017, and the jury trial set for April 18, 2017, are **CANCELLED**; and

3. The Court will enter an appropriate Judgment contemporaneously herewith.

This, the 15th day of September, 2016.

Gregory F. Van Tatenhove
United States District Judge

---

[22] Although the Complaint briefly references the First and Fourteenth Amendments [R. 1-2 at 4], Vinova's Complaint alleges no facts supporting claims based on those Amendments, and none of the counts in the Complaint are based on them. Vinova also makes no attempt anywhere in the record to make out a prima facie case for violations related to those Amendments and fails even to reference them in her arguments. Thus, to the extent she intends to bring any claim based upon them, such claims necessarily fail as a matter of law.